**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-22521-BLOOM**

RAFAEL ZAGA TAWIL,

      Petitioner,

v.

PATRICIA CARDINAL, Warden/Officer-in-charge,
ICE ERO Processing Center Miramar, in her official capacity;
GARRETT RIPA, Field Office Director, Miami Field Office,
U.S. Immigration and Customs Enforcement, in his official capacity;
TODD M. LYONS, Acting Director, U.S. Immigration & Customs
Enforcement, in his official capacity; and MARKWAYNE MULLIN,
Secretary, U.S. Department of Homeland Security, in his official capacity,

      Respondents.

_____/

## ORDER ON PETITION FOR WRIT OF *HABEAS CORPUS*

**THIS CAUSE** is before the Court upon Petitioner Rafael Zaga Tawil's ("Petitioner")

Petition for Writ of *Habeas Corpus* or, in the Alternative, Emergency Bond Hearing ("Petition"),

ECF No. [1]. Respondents filed a Response in Opposition ("Response"), ECF No. [26], to which

Petitioner filed a Reply, ECF No. [27]. The Court has reviewed the Petition, the supporting and

opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, the

Petition is granted in part and denied in part.

### I.   BACKGROUND

Petitioner is a prominent Mexican-Jewish businessman and entrepreneur who, for the past

several years, has been the target of a campaign of political persecution by high-ranking Mexican

government officials. ECF No. [1] ¶ 19. When Petitioner refused a demand by the Attorney

General and the President's legal counsel to return a 5-billion-peso settlement his company had

received from Infonavit, a quasi-state institution, they threatened that he and his family would be

pursued "with all the force of the state." *Id*. In accordance with that threat, the Fiscalía General de la República ("FGR") lodged a series of criminal charges, including tax fraud, money laundering, and organized crime, against Petitioner and his brother and eventually two of his sons. *Id*. ¶ 20. Arrest warrants were issued on December 25, 2020. *Id*. According to Petitioner, he fought these charges through the Mexican legal system and prevailed repeatedly. *Id*. ¶ 21. In July 2023, a Circuit Court three-judge panel unanimously ruled that the arrest warrants against him and his son were unconstitutional because they had no factual or evidentiary basis. *Id*.

Despite this, the FGR reissued arrest warrants on the same grounds in July 2024. *Id*. ¶ 22. The INTERPOL Commission for the Control of Files confirmed in certifications dated August 9, 2023 and August 28, 2023 that Petitioner and his son are not subject to any INTERPOL notice or diffusion, and a Red Notice previously issued against another one of his sons was provisionally blocked by INTERPOL as of January 30, 2024. *Id*.

In an attempt to flee escalating persecution and the renewed arrest warrants, Petitioner entered the United States on March 13, 2024, at the Hidalgo, Texas port of entry. *Id*. ¶ 23. He was inspected by Customs and Border Protection and paroled into the United States under a Significant Public Benefit Parole. *Id*. On March 15, 2024, the Department of Homeland Security ("DHS") issued two documents: (1) a Notice to Appear that checked only the box "You are an arriving alien" but contained no factual allegations, no charges, no statutory provisions, no hearing date, no hearing time, and no court address; and (2) a Notice of Custody Determination (Form I-286) pursuant to Section 236 of the Immigration and Nationality Act ("INA"), which released Petitioner on his own recognizance with conditions. *Id*. ¶ 24. A Warrant for Arrest of Alien (Form I-200) was issued by Supervisory Special Agent Robert 8187 Castillon based solely on "statements made voluntarily by the subject to an immigration officer." *Id*. According to the Petition, during his two

years of liberty, Petitioner complied with every immigration requirement and filed his asylum application within five months of entry. *Id*. ¶ 28.

On Saturday, April 11, 2026, Immigration and Customs Enforcement ("ICE") agents arrested Petitioner as he was walking to synagogue for morning prayer in observance of Shabbat. *Id*. ¶ 30. He was taken into custody and transported to the ICE Enforcement and Removal Operations ("ERO") Processing Center in Miramar, Florida. *Id*. No removal proceedings have been initiated, no written notice of parole termination was provided to Petitioner prior to his arrest, no individualized custody determination has been made, and no case-by-case determination regarding the appropriateness of his parole has been made. *Id*. ¶ 31.

Petitioner challenges the legality of his ongoing civil immigration detention and seeks relief within the traditional scope of *habeas corpus*. *Id*. ¶ 11. According to Petitioner, his re-detention is unlawful for multiple, independent reasons. *Id*. ¶ 4. First, Petitioner argues that his re-detention without an individualized assessment or pre-deprivation process constitutes a violation of his procedural due process rights under the Fifth Amendment (Count I). *Id*. ¶¶ 37–43. Second, he argues that Respondents violated the parole revocation procedures found at 8 C.F.R. § 212.5(e)(2)(i) (Count II). *Id*. ¶¶ 44–48. Third, Petitioner argues that his detention without lawful purpose and in violation of his reliance interest violates his substantive due process rights under the Fifth Amendment (Count III). *Id*. ¶¶ 49–52. Fourth, Petitioner argues his re-arrest without changed circumstances violates the Fourth Amendment (Count IV). *Id*. ¶¶ 53–55. Fifth, Petitioner argues that Respondents have committed a "statutory violation" in detaining him under the wrong statute (Count V). *Id*. ¶¶ 56–60. Sixth, Petitioner alleges "arbitrary and capricious agency action" in violation of the Administrative Procedure Act ("APA") (Count VI). *Id*. ¶¶ 61–62.

On April 12, 2026, this Court issued an Order to Show Cause, ordering Respondents to file a memorandum of fact and law addressing why the Petition should not be granted. ECF. No. [4] ¶ 2. This Court also ordered Respondents to not remove Petitioner from the United States or the Southern District of Florida until further order of the Court. *Id*. ¶ 5. On April 17, 2026, Respondents filed their Response, ECF No. [26], and Petitioner then filed his Reply, ECF No. [27].

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   DISCUSSION

### A.  Jurisdiction

Respondents contend that the Court lacks jurisdiction to adjudicate the Petition. ECF No. [26] at 10. Specifically, they argue that 8 U.S.C. §1252(g) precludes jurisdiction in this case, as the decision to detain an alien pending removal proceedings falls within the decision to "commence removal proceedings." *Id*.

Petitioner replies that he does not challenge the decision to commence proceedings but instead "challenges only the legal basis for his continued detention." ECF No. [27] at 10. He asks the Court to hear his challenge to the "underlying statutory basis" for his detention, which is not proscribed by § 1252(g). *Id*.

Section 1252(g) provides, in relevant part, that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to

commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). This provision—intended to protect the discretion of immigration authorities—was "designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" *Id.* (quoting *Reno*, 525 U.S. at 482).

Indeed, the Supreme Court has cautioned that § 1252(g) is to be read narrowly, encompassing only the "three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno*, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. *Camarena*, 988 F.3d at 1272 (quoting *Reno*, 525 U.S. at 482).

Here, Petitioner is not attacking Respondents' decision to commence removal proceedings, as alleged by Respondents. That is, he does not attack removal efforts *per se*. Instead, Petitioner largely challenges Respondents' decision to categorize him as an "applicant for admission" under § 1225(b)(2) as well as its decision to re-detain him without certain forms of process. That is, he attacks the legality of his detention, a challenge that is collateral to and does not seek to block removal efforts. *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (finding that § 1252(g) does not bar "judicial consideration of collateral challenges to the legality of a petitioner's detention"); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (finding that § 1252(g) did not bar review of a claim related to detention where the petitioner "did not ask the district court to

block a decision 'to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter'").

It is well-settled that courts have habeas jurisdiction to consider "challenges to the lawfulness of immigration-related detention." *Zadvydas*, 533 U.S. at 687 (2001). Indeed, "[w]hile [§ 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions." *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (citing *Reno*, 525 U.S. at 485 n. 9)). In light of this, the Court finds that it retains jurisdiction to address Petitioner's challenges to the legality of his detention.

### B. Proper Detention Authority

The adjudication of this Petition hinges largely on whether Petitioner is properly detained under § 1225(b)(2) or § 1226(a). On the one hand, there is evidence on the record indicating that Petitioner was originally detained pursuant to § 1225(b)(2). Petitioner was detained at the Texas border by Customs and Border Protection Agents upon entering the country on March 13, 2024. ECF No. [23]. The Eleventh Circuit has held that § 1225 "applies to arriving aliens seeking entry at the border." *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1276 (11th Cir. 2026). Furthermore, that same day, Petitioner was "paroled," with the purpose of his parole being "significant public benefit" ("SBP"); that language mirrors 8. C.F.R. § 212.5(b) and 8 U.S.C. § 1182(d)(5)(A), both of which address "parole" of aliens contemplated by § 1225. Finally, Petitioner's first Notice to Appear, issued to him on March 15, 2024, classified him as an "arriving alien," ECF No. [1-1] at 1, which is the language used in the § 1225 context. *Hernandez Alvarez*, 175 F.4th at 1276.

However, Petitioner's parole terminated on March 15, 2024, and on that day, Petitioner was issued a Notice of Custody Determination indicating that he was being released on his own

recognizance "[p]ursuant to the authority contained in section 236" of the INA, ECF No. [1-1] at 4, which refers to § 1226. His Order of Release on Recognizance operated "[i]n accordance with section 236" of the INA. *Id.* at 6. The Ninth Circuit has indicated that aliens released on an order of their own recognizance were necessarily detained and released under § 1226. *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007). A Warrant for Arrest of Alien (Form I-200) was issued for Petitioner, ECF No. [1-1] at 5, and arrest by warrant is only contemplated and necessary in the § 1226 context. *Compare* 8 U.S.C. § 1225 *with* 8 U.S.C. § 1226.

Petitioner argues that "DHS itself classified Petitioner's detention under the permissive detention statute, which entitles him to a bond hearing, rather than the mandatory detention provisions applicable to arriving aliens." ECF No. [1] ¶ 25. Respondents argue that, as an arriving alien, Petitioner was not eligible for release under the Order of Release. ECF No. [26] at 2. As a result, the Order of Release has no legal effect on Petitioner's immigration status or Respondents' authority to detain him under § 1225. *Id*. Petitioner was and remains an arriving alien subject to mandatory detention under § 1225, unless temporarily paroled. *Id.* at 6–7.  Petitioner replies that Respondents "used § 1226 when releasing Petitioner and again when issuing the post-arrest custody determination, yet invoke § 1225 only when trying to prevent any neutral custody review." ECF No. [27] at 14.

The Court finds that, based on the evidence before it, Petitioner is detained pursuant to § 1226(a). The Court finds highly probative that Petitioner was released on his own recognizance pursuant to § 1226. Under § 1225, the government's options were limited to removal or detention pending review by an asylum officer. That the government released Petitioner on his own recognizance based *only* on § 1226—without the case-by-case "review" contemplated by § 1225's implementing regulations, 8 C.F.R. § 212.5(c)—is strong evidence that he is currently subject to

§ 1226, rather than § 1225. This conclusion is consistent with the majority of courts to address the issue.[1]

Equally probative is the fact that a warrant was issued for Petitioner's arrest. ECF No. [1-1] at 5. Section 1226(a) provides that an alien may be arrested and detained "[o]n a warrant issued by the Attorney General." Section 1225 contains no similar warrant requirement. "It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions." *Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025).

Fundamentally, the weight of the evidence indicates that "the Government has affirmatively decided to treat" Petitioner "as being detained under Section 1226(a) and it cannot

---

[1] *See, e.g., Helbrum v. Williams Olson*, No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273, at *4 (S.D. Iowa Sept. 30, 2025) ("[H]e arguably could have been treated as an 'applicant for admission' subject to mandatory detention under § 1225(b)(2)(A) . . .. Instead, they released Petitioner '[i]n accordance with [§ 1226]' and on his 'own recognizance.' . . . His Notice to Appear similarly described him as 'an alien present in the United States' and not an 'arriving alien.' . . . This is consistent with him being governed by § 1226, not § 1225."); *Quispe-Ardiles v. Noem*, No. 1:25-CV-01382-MSN-WEF, 2025 WL 2783800, at *6 (E.D. Va. Sept. 30, 2025) ("DHS's decision to release Mr. Quispe-Ardiles on recognizance and its citations to § 1226 in Mr. Quispe-Ardiles's paperwork do not support its present argument that federal respondents 'actually intended for him to be paroled into the United States pursuant to § 1182(d)(5)(A).'"); *J.U. v. Maldonado*, No. 25-CV-04836 (OEM), 2025 WL 2772765, at *5 (E.D.N.Y. Sept. 29, 2025) ("The Notice of Custody Determination states that CBP released Petitioner on his own recognizance pursuant to [§ 1226] . . .. The Order of Release on Recognizance issued on March 19, 2024, provided that he was released '[i]n accordance with [§ 1226] . . .. Accordingly, all of DHS's actions with respect Petitioner in March 2024 were taken pursuant to § 1226(a) . . .. The same is true for Petitioner's current arrest and detention: Petitioner's arrest record from DHS is devoid of any reference to § 1225, and Respondent has not presented any records showing that Petitioner was detained pursuant to § 1225."); *Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *6 (E.D. Cal. Oct. 17, 2025) ("[T]he order releasing Petitioner from detention in 2005 indicates she was placed in removal proceedings and released on her own recognizance pursuant to . . . § 1226(a) . . .. This further undermines the government's argument that she is subject to mandatory detention under section 1225(b)."); *Savane v. Francis*, No. 1:25-CV-6666-GHW, 2025 WL 2774452, at *7 (S.D.N.Y. Sept. 28, 2025) ("Respondents' invocation of § 1226 to justify Petitioner's initial release may have been, as Respondents argue, a 'mistake,' but Petitioner was still, as a factual matter, released from custody."); *Hasan v. Crawford*, No. 1:25-CV-1408 (LMB/IDD), 2025 WL 2682255, at *8 (E.D. Va. Sept. 19, 2025) ("Given the significant distinction between being paroled into the United States under § 1182(d)(5)(A) and being released on recognizance under § 1226(a)(2)(B), DHS's consistent citations to § 1226(a) on Hasan's paperwork does not support the argument that the federal respondents actually intended for him to be paroled into the United States pursuant to § 1182(d)(5)(A).").

now be heard to change its position to claim that he is detained under Section 1225(b)." *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (citing *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)); *see also Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) ("[T]he government cannot switch tracks and subject Petitioners to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioners in removal proceedings under section 1229a and released them on their own recognizance under section 1226(a)."). Thus, the Court finds that Petitioner was and remains detains under § 1226(a).[2]

---

[2] Even if Petitioner's release was construed as a "parole," many courts find that, based on the border-interior distinction instantiated in § 1225 and § 1226, an alien like Petitioner—who is re-detained in the interior after living in the United States for years—is properly re-detained only under § 1226(a). *See, e.g.*, *Rodriguez Valencia v. Noem*, No. 3:26-CV-297-MMH-PDB, 2026 WL 730318, at *6 (M.D. Fla. Mar. 16, 2026) (finding that it would be "absurd" to classify an alien initially detained and paroled under § 1225(b)(2) as "arriving" years after her parole and finding her detained under § 1226); *Brunel v. Warden et al.*, No. 3:26-CV-1623-WWB-SJH, 2026 WL 1992155, at *1 (M.D. Fla. July 10, 2026) (same); *Linarez v. Stamper*, No. 1:26-cv-101-JAW, 2026 WL 592294, at * 5 (D. Me. Mar. 3, 2026) ("[D]istrict courts across the country have consistently held that the expiration of § 1182 parole does not require treating the noncitizen as if they had never been paroled in the first place."); *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065, 2025 WL 3314420, at * 17 (E.D.N.Y. Nov. 28, 2025) ("Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal."); *Matkarimov v. Noem*, No. 26-48-DLB, 2026 WL 700072, at *2 (E.D. Ky. Mar. 12, 2026) (same); *Coal. For Human Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry.' "); *Wu v. Stamper*, No. 1:26-CV-00090-SDN, 2026 WL 608286, at *4 (D. Me. Mar. 4, 2026) (finding that "a more judicious reading of section 1182(d)(5)(A) suggests that a noncitizen whose parole has expired should be treated similarly to the 'vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal.'"); *Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 WL 3654098, at * 6 (S.D.N.Y. Dec. 17, 2025) ("It would try any plain understanding of the term arrival to classify an individual like [petitioner] who has lived and worked in the United States for over a year prior to his re-detention as an arriving alien."); *Walizada v. Trump*, No. 2:25-cv-768, 2025 WL 3551972, at *15 (D. Vt. Dec. 11, 2025) (finding it "unjust" and "counterintuitive" that a petitioner "who was welcomed into the United States after extensive screening, would be entitled to less statutory protection and due process rights than someone who has entered the country illegally and committed certain crimes here."); *but see Lopez v. Dep't of Homeland Sec.*, No. 26-CV-22984-JB, 2026 WL 1782055, at *2 (S.D. Fla. June 22, 2026) ("Even though Petitioner was initially paroled into the United States pending removal proceedings, [after his re-detention] . . . Petitioner is subject to mandatory detention under § 1225(b)(1) and is not entitled to a bond hearing.").

The Court's conclusion here disposes of Petitioner's Count II, which alleges that Respondents violated the parole revocation procedures found at 8 C.F.R. § 212.5(e)(2)(i). Insofar as Petitioner was and is not properly detained pursuant to § 1225(b), the parole-revoking provisions at 8 C.F.R. § 212.5(e)(2)(i) are not relevant. Thus, the Petition is denied as to Count II. Relatedly, the Court's conclusion in this section necessarily implies that the Court finds for Petitioner on Count V, which alleges a "statutory violation" insofar as Petitioner was detained under the wrong statute. Thus, the Petition is granted as to Count V.

### C.  Process Required by Statute and Regulation for those Detained Under § 1226(a)

The next relevant question is what sort of process Petitioner was entitled to as a matter of statute and regulation before his re-detention. Petitioner argues that "DHS's decision to re-detain Petitioner more than two years after releasing him on his own recognizance, without any individualized assessment, without any articulated change in circumstances, and without compliance with applicable regulations, is arbitrary and capricious and must be set aside." ECF No. [1] ¶ 62.

Respondents offer two relevant responses. First, they argue that the Order of Release was terminated when the conditions of the Order of Release were violated—namely, when Mexico issued arrest warrants for Petitioner, thereby "associating" him with criminal activity in violation of the Order of Release. ECF No. [26] at 9. Second, Respondents argue that "they retain discretion to revoke the Order of Release at any time." *Id*. The applicable regulatory scheme permits revocation at any time, so all proper revocation proceedings were followed. *Id*.

Petitioner replies that even if Respondents could revoke Petitioner's release "at any time," Respondents have produced no document memorializing the revocation decision and therefore cannot show that revocation was effectuated by any of the authorized parties. ECF No. [27] at 12.

The Court finds that all applicable statutory provisions and regulations were followed. For those detained under § 1226(a), "[f]ederal regulations provide that aliens . . . receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). The statute itself provides that bond or parole provided under § 1226(a) may be revoked "at any time," thereby allowing the alien to be rearrested and detained under the original warrant. 8 U.S.C. § 1226(b). The statute's implementing regulations specify that "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1(b)(1). These regulations further provide that "[w]hen an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of [multiple parties], in which event the alien may be taken into physical custody and detained." *Id.* § 1236.1(c)(9).

Petitioner's re-detention was therefore plainly within the scope of detentions permitted by the statutory scheme and regulations. A warrant existed for his arrest, ECF No. [1-1] at 5, thereby permitting authorities to "at any time" arrest Petitioner and take him into custody. Thus, his detention falls more under § 1236.1(b)(1) than under § 1236.1(c)(9). And under that provision, all required process was followed prior to his detention.[3] As such, Petitioner's claim in Count VI that Respondents violated the APA by "arbitrary and capricious" agency action is without merit and is denied.

### D.  Due Process Requirements

At this point, Petitioner's remaining claims include a procedural due process claim (Count I), a substantive due process claim (Count III), and a Fourth Amendment claim (Count IV). In

---

[3] As the Court addresses later, Petitioner is entitled to a post-detention bond hearing. However, this has no bearing on whether his initial detention comported with the applicable statutory and regulatory provisions.

support of his due process claims, Petitioner advances two primary arguments. First, in the context of his procedural due process claim, he argues that a pre-deprivation hearing was constitutionally required or, in the alternative, that a "prompt, individualized bond hearing" was required. ECF No. [1] ¶ 42. Specifically, "Respondents' detention of Petitioner without any individualized custody determination, without any opportunity for a hearing before a neutral arbiter, and without any showing of changed circumstances violates the Due Process Clause of the Fifth Amendment." *Id.* ¶ 43. In support of his substantive due process claim, Petitioner argues that his detention lacks a "rational relationship to a legitimate government purpose" and that he has built a life "in reliance on the government's determination that he could remain at liberty," so justification is required to re-detain him. *Id.* ¶¶ 50, 51.

Respondents argue that Petitioner's due process claims fail because he is detained pursuant to valid statutory authority. ECF No. [26] at 10. Moreover, Respondents hold that the only process due to Petitioner "is the process provided for in the INA." *Id.* (citation omitted).

Petitioner replies that Respondents violated his procedural due process rights by revoking his release and re-detaining him without prior notice or any meaningful pre-deprivation process. ECF No. [27] at 7. More specifically, once DHS released Petitioner on his own recognizance, he acquired a protected liberty interest in remaining free, and due process required a pre-deprivation hearing. *Id.* Petitioner fundamentally argues that he should have had an opportunity to be heard before he was re-detained. *Id.* at 10. Finally, Petitioner contends that the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), does not control, as he had long been living and working in the United States; thus, *Thuraissigiam* does not speak to his due process interest. *Id.* at 12–13.

The Court finds that Petitioner's due process rights are being violated, insofar as he has not been provided with a prompt post-detention bond hearing, consistent with the requirements of § 1226(a).[4] Beyond this, however, the Court is unprepared to find any additional violation of Petitioner's rights. For one, the issue of whether § 1226(a)'s post-deprivation bond hearing is sufficient is not truly before the Court. Indeed, Petitioner implies that, "at minimum, a prompt post-deprivation bond hearing" is required. ECF No. [1] ¶ 41. In the absence of an opportunity for the parties to more squarely brief this issue, the Court declines to take it up.

Moreover, at least four circuit courts and several district courts to assess the sufficiency of § 1226(a)'s procedures—namely, a post-deprivation bond hearing—have either found or implied them to generally be constitutionally sufficient. *See, e.g.*, *Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022); Hernandez-Lara v. Lyons, 10 F.4th 19, 39–41 (1st Cir. 2021); *Ali v. Brott*, 770 F. App'x 298, 301 (8th Cir. 2019) ("The Supreme Court has never indicated the bond hearing process set forth in the statute and accompanying regulations is constitutionally deficient. To the contrary, Supreme Court precedent indicates such a framework is constitutionally permissible."); *Lopez-Campos*, 797 F. Supp. 3d at 785 ("[T]he Court has specifically held that Section 1226(a) governs Lopez-Campos' detention, therefore the process due to him is that which is afforded under Section 1226(a)."), *aff'd*, 2026 WL

---

[4] *See, e.g.*, *Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1282 (D.N.M. 2026) ("Because Petitioner is subject to § 1226's discretionary detention provision rather than mandatory detention under § 1225, he is entitled to a bond hearing. Classifying Petitioner under § 1225 has thus deprived him of due process by denying him the opportunity to be heard at such a hearing.") (citations omitted); *Facio v. Baltazar*, No. 25-CV-03592-CYC, 2025 WL 3559128, at *3 (D. Colo. Dec. 12, 2025) ("[T]he Court agrees with other courts that have, against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation. After all, the facts clearly demonstrate that [the petitioner] was entitled to more process than he received pursuant to § 1226(a) and its implementing regulations.") (citation modified); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. Aug. 29, 2025) ("[T]he Court has specifically held that Section 1226(a) governs Lopez-Campos' detention, therefore the process due to him is that which is afforded under Section 1226(a)."), *aff'd*, 2026 WL 1283891, at *13 ("find[ing] no reason to disturb" the district courts' holdings "that the government's detention of Petitioners without bond under § 1226(a) was a deprivation of liberty that violated Petitioners' due process rights").

1283891; *A.V., v. Pittman et al.*, No. CV 25-13472 (MCA), 2026 WL 1893510, at *6 (D.N.J. June 30, 2026); *S.D.B.B. v. Johnson*, No. 1:25-CV-882, 2025 WL 2962669, at *6 (M.D.N.C. Oct. 17, 2025).

In light of these considerations, the Court finds that Petitioner is entitled to a bond hearing and will grant the Petition as to his procedural due process claim (Count I). However, the Court declines to order Petitioner's immediate release on the basis that a lack of pre-detention hearing violated his due process rights.

The Court pauses to more squarely address Petitioner's substantive due process claim. It is well-established that "only the most egregious official conduct" violates substantive due process. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Executive action violates a plaintiff's substantive due-process rights—even if the right involved is a fundamental one—if the action shocks the conscience." *Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1239 (11th Cir. 2025). The relevant question for assessing a substantive due process violation in this context is whether the detention lacks a reasonable connection to effectuating a removal and instead "morphs into a penalty." *Kothari v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 2:26-CV-1917-KCD-NPM, 2026 WL 1900251, at *1 (M.D. Fla. July 2, 2026) (citing *Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011)). "So long as custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution." *Id*.

Based on these considerations, the Court is unprepared at this point to find that a roughly 3-to-4-month detention of an alien pending a removal decision—albeit one that unlawfully operated under the wrong statutory scheme—violates substantive due process. There is no indication on the record—apart from Petitioner's conclusory assertion that ICE may be acting at the behest of a "party Petitioner fears and has sued in Florida state court," ECF No. [27] at 9—that

this detention is punitive in nature, rather than connected to genuine removal decision-making. Indeed, the detention plainly appears to be one undertaken "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Thus, the Petition is denied as to its substantive due process claim (Count III).

### E. Fourth Amendment

Petitioner's final remaining claim is that his detention violates the Fourth Amendment (Count IV). ECF No. [1] at 14. Petitioner argues it was unlawful for Respondents to re-arrest him without changed circumstances. *Id.* ¶ 55. According to Petitioner, changed circumstances were required to give rise to probable cause for his arrest, and no new facts have arisen. *Id.*

Respondents do not respond to this issue, ECF No. [26], and Petitioner does not address it in his Reply, ECF No. [27].

Nonetheless, the Court addresses this claim, finding three points relevant. First, habeas is not a vehicle to address defects in an initial arrest; it exists to assess whether a current detention is unlawful. *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923). "In other words, if the government has lawful grounds to detain Petitioner pending his removal, he is not entitled to habeas relief based on a defective arrest." *Acosta Gonzalez v. Noem*, No. 26-60781-CIV, 2026 WL 1077836, at *4 (S.D. Fla. Apr. 20, 2026) (citing *A.E. v. Powell*, 2026 WL 782294, at *3 (N.D. Ala. Mar. 19, 2026)); *see also Buriev v. Warden, GEO, Broward Transitional Ctr.*, No. 25-CV-60459, 2025 WL 2763202, at *3 (S.D. Fla. Sept. 26, 2025) ("[A]n unlawful arrest, by itself, doesn't warrant release[.]"); *Williams v. Sec'y, Dep't of Corr.*, No. 5:17-CV-309, 2019 WL 2717202, at *4 (M.D. Fla. June 28, 2019) ("[A] Fourth Amendment violation during arrest does not by itself warrant habeas relief."). Second, the Supreme Court has held that "if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892). And third, the

Eleventh Circuit has held that § 1252(g) bars courts from exercising jurisdiction over Fourth Amendment claims that arise in the context of federal agents detaining an alien, as "[s]ecuring an alien while awaiting a removal determination constitutes an action taken to commence proceedings." *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013).

For all these reasons, the Court finds that it must deny the Petition with respect to its Fourth Amendment claim (Count IV).

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  The Petition, **ECF No. [1]**, is **GRANTED IN PART AND DENIED IN PART.**

2.  Within seven (7) days of the date of this Order, Respondents must either: (1) provide Petitioner with a bond hearing before an immigration judge consistent with 8 U.S.C. § 1226(a), at which the Government shall bear the burden of justifying his continued detention by clear and convincing evidence of dangerousness or risk of flight; or (2) release Petitioner from custody, under reasonable conditions of supervision.

3.  Respondents are enjoined from denying bond to Petitioner on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2).

4.  Respondents must, within 24 hours of the bond hearing, file a status report indicating the outcome of the bond hearing and, if release on bond is denied, the reason(s) for the denial.

5.  The Clerk of Court shall **CLOSE** this case.

6.  To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

16

Case No. 26-cv-22521-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 30, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

17